IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **UBICOMM, LLC,**<br><br>  Plaintiff;<br><br>  v.<br><br>**ZAPPOS IP, INC.,**<br><br>  Defendant. | Civil Action No. 13-1029-RGA |

MEMORANDUM OPINION

Darlene Ghavimi, Esq., Farney Daniels PC, Wilmington, DE; and Steven R. Daniels, Esq. (argued), Farney Daniels PC, Georgetown, TX, Attorneys for the Plaintiff.

Steven J. Balick, Esq., Ashby & Geddes, Wilmington, DE; Adam Mortara, Esq., Bartlit Beck Herman Palenchar & Scott LLP, Chicago, IL; and Abby M. Mollen, Esq. (argued), Bartlit Beck Herman Palenchar & Scott LLP, Chicago, IL, Attorneys for the Defendant.

November 13, 2013

ANDREWS, UNITED STATES DISTRICT JUDGE:

Presently before the Court for disposition is Defendant Zappos IP, Inc.,'s Motion to Dismiss. (D.I. 9). This matter has been fully briefed (D.I. 10, 14, 15, 16, 17, 18) and the Court held oral argument on October 7, 2013. (D.I. 19, "Tr"). For the reasons set forth herein, the Defendant's motion is **GRANTED**.

**BACKGROUND**

Plaintiff, UbiComm LLC, alleges that Defendant, Zappos IP, Inc., "[w]ithout license or authorization. . . has directly infringed and continues to directly infringe one or more claims of the [United States Patent No. 5,603,054 ("'054 patent")]. . . at least by making and/or using one or more websites, including but not limited to, http://zappos.com/." (D.I. 1 at 3). Claim one of the '054 patent is the only independent claim and reads:

> 1. A method of triggering a selected machine event in a system including a multiplicity of computer controlled machines and a multiplicity of users, each computer controlled machine being capable of performing a one of the multiplicity of types of machine events, some of the computer controlled machines being stationary and others of the computer controlled machines being mobile, the method comprising the steps of:
>
> selecting a type of machine event to be triggered;
>
> selecting triggering properties of said system necessary for triggering said selected machine event;
>
> selecting triggering conditions of an identified user necessary for triggering said selected machine event;
>
> perceiving said triggering conditions;
>
> determining whether said triggering properties are met; and
>
> triggering said selected machine event when the triggering properties are met and the triggering conditions are perceived.

1

In accordance with the Court's Order, the Plaintiff identified claim terms it contended needed construction, and offered its proposed constructions. (D.I. 18). The terms and constructions were:

| Claim | Claim Term | Plaintiff's Proposed Construction |
|---|---|---|
| 1 | "system" | A multiplicity of computer controlled machines and a multiplicity of users, where each computer controlled machine is capable of performing one of a multiplicity of types of machine events, and where some of the computer controlled machines are stationary and some are mobile. |
| 1, 8 | "machine" | A physical apparatus capable of performing a function |
| 1, 3, 4, 5, 6, 8 | "user" | "A human who interacts, implicitly or explicitly, with the resources of the system." |
| 1 | "machine event" | Operation of a machine in the system to achieve a detectable function in response to conditions of the user and properties of the system |
| 1 | "type of machine event" | One of the particular machine events the system is capable of performing |
| 1 | "said system" | The "system" as defined above by the preamble of Claim 1. |
| 1, 2, 4, 5, 8 | "identified user" | A particular one of the users identified in the preamble of Claim 1 |
| 1 | "perceiving" | Detecting |
| 3 | "particular time" | a detectable time |
| 7 | "specified elapsed time" | a detectable time period after the previous event |

(D.I. 18-1 at 1, 2 (internal citations and footnotes omitted)).

The patent describes the invention in the specification as:

The present invention provides a method for superimposing prespecified locational, environmental, and contextual controls on user interactions, including interactions of mobile users, with computational resources of a distributed computer system and with equipment residing on processes running on said system. The steps of the

2

method include registering interaction policies, including user specified interaction policies, on an identifiable address path, registering user and equipment locations, including dynamically updated indications of the locations of mobile users, and registering interaction requests. The locational and contextual attributes of each of the interaction requests is identified by reference to contextual information including registered location. The system grants interaction requests that have locational and contextual attributes that are consistent with the specified interaction policies, and denies interaction requests that have locational or contextual attributes that are inconsistent with the specified interaction policies.devices [sic] in close proximity to the identified user, and determines a display property for said electronic message based on the contextual attributes, the user profile properties, and the level of privacy and level of priority of the electronic message.

US Patent '054, col. 4:37-59.

The Defendant moves to dismiss on grounds that the patent claims an abstract idea and thus that the patent is directed to ineligible subject matter under 35 U.S.C. § 101.

## DISCUSSION

### 1. Legal Standard

At the motion to dismiss stage a patent claim can be found directed towards patent ineligible subject matter if the "*only* plausible reading of the patent must be that there is clear and convincing evidence of ineligibility." *Ultramercial, Inc. v. Hulu*, LLC, 722 F.3d 1335, 1339 (Fed. Cir. 2013) (emphasis in original). Section 101 provides that, "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. However, the Supreme Court "has recognized . . . three narrow categories of subject matter outside the eligibility bounds of § 101—laws of nature, physical phenomena, and abstract ideas." *Ultramercial, Inc.*, 722 F.3d at 1341. The purpose of these carve outs are to protect the "basic tools of scientific and technological work." *Mayo Collaborative Servs. v. Prometheus Labs, Inc.*, 132 S. Ct. 1289, 1293 (2012). However, "a

process is not unpatentable simply because it contains a law of nature or a mathematical algorithm," but "an application of a law of nature or mathematical formula to a known structure or process may well be deserving of patent protection." *Id.* at 1293-94 (quotation marks and italics omitted). The "[Supreme Court] has. . . made clear [that] to transform an unpatentable law of nature into a patent-eligible application of such a law, one must do more than simply state the law of nature while adding the words 'apply it.'" *Id.* at 1294 (italics omitted).

In determining whether an abstract idea is patent eligible, the Supreme Court has determined that the patent must contain an "inventive concept." *Id.* at 1299. This "inventive concept" must do more than add a "well-understood, routine, conventional activity, previously engaged in by those in the field." *Id.* Furthermore, "the prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of the formula to a particular technological environment or adding insignificant postsolution activity." *Bilski v. Kappos*, 130 S. Ct. 3218, 3230 (2010) (internal quotation marks omitted).

The Federal Circuit has identified a two-step approach to determining whether something is patent eligible under § 101. *Accenture Global Servs, GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1341 (Fed. Cir. 2013). "First, the court must identify whether the claimed invention fits within one of the four statutory classes set out in § 101. Second, one must assess whether any of the judicially recognized exceptions to subject-matter eligibility apply, including whether the claims are to patent-ineligible abstract ideas." *Id.* (internal citations and quotation marks omitted).

If the court determines that the claim embodies an abstract idea, the Federal Circuit has instructed that:

4

> [T]he court must determine whether the claim poses any risk of preempting an abstract idea. To do so the court must first identify and define whatever fundamental concept appears wrapped up in the claim. Then, proceeding with the preemption analysis, the balance of the claim is evaluated to determine whether additional substantive limitations narrow, confine, or otherwise tie down the claim so that, in practical terms, it does not cover the full abstract idea itself.

*Id.* at 11 (internal citations and quotation marks omitted).

### 2. Discussion

*Fundamental Concept*

Claim 1[1] of the '054 patent claims the fundamental concept of a conditional action.[2] The Defendant argues that the claims in '054 patent "claim[] the abstract idea of conditional action – *i.e.*, the basic concept of conditioning one action on the existence of another action or circumstance." (D.I. 10 at 16). As evidence of this claim, the Defendant points to the patent method's six steps, which the Defendant summarizes as "'selecting' a desired machine event and the events or circumstances that will trigger it; 'determining' whether those conditions exist; and if so, 'triggering' the action. . . .'" *Id.* Furthermore, the Defendant argues that the claims themselves are "agnostic as to the process used to apply" the generalized steps.

Conversely, the Plaintiff argues that a "conditional action" is not the focus of the claims of the '054 patent. (D.I. 14 at 14). The Plaintiff maintains that the patent is "directed towards a method of triggering concrete machine events (*e.g.* sending a defined message based on an updated user condition) within a system of computer operated machines, with the components and limitations. . . ." *Id.* While the Court recognizes that the claims incorporate various

---

[1] The Court will first analyze independent claim 1 and then turn to dependent claims 2 through 8. All eight claims are method claims, and thus fall within the statutory class of processes. *See* 35 U.S.C. § 100 (b) (defining a process as a "process, art or method").

[2] As the Court must, the Court reads the claim in the light most favorable to the Plaintiff. Here, as the Plaintiff has submitted its proposed claim constructions, there is no need for the Court to independently construe the claim terms. Instead, the Court simply adopts the Plaintiff's claim constructions for the purpose of this Motion and finds that this construction would be the construction most favorable to the Plaintiff. *See Ultramercial*, 722 F.3d at 1349.

structural components, the question for the Court at this juncture is not to determine whether there are sufficient limitations, but instead to determine whether and what "the abstract idea at the heart" of the claim is. *Accenture*, 728 F.3d at 1344.

Here, the Court agrees with the Defendant that the abstract idea at the heart of the claim is the very concept of a conditional action. The Court finds that claim 1 of the '054 patent, generally seeks to:

(1) Select an action to occur;

(2) Select a machine based triggering parameter;

(3) Select a user based triggering parameter;

(4) Monitor the aforementioned two parameters;

(5) Determine if the parameters are triggered; and

(6) If they are, take the action selected in step 1.

These six steps simply describe a conditional action, an action that is triggered based upon a predefined parameter. Thus, the claim itself is simply an embodiment of a conditional action.

A conditional action is a basic tool on which a multitude of disciplines rely upon for innovation. As the Defendant points out, "[the concept] informs disciplines ranging from medicine ('Treat a patient with medicine X when he presents with symptom Y.') . . . , economics ('Increase price when customer demand is greater than supply.')[,] to law ('My performance of the contract is excused if you materially breach it.')." (D.I. 10 at 16). The fundamental role that the concept of conditional actions play in numerous disciplines is sufficient to warrant it protection as an abstract idea, because its patenting would "impede innovation[,] more than it would tend to promote it." *Mayo*, 132 S. Ct. at 1293.

Furthermore, a conditional action is more abstract then other ideas that Federal Circuit and the Supreme Court have previously held to be unpatentable. For example the Supreme Court in *Bilski* found that hedging was an abstract idea, *Bilski v. Kappos*, 130 S. Ct. 3218, 3231 (2010), and the Federal Circuit in *Dealertrack* found that processing information through a clearinghouse was an abstract idea, *Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1334 (Fed. Cir. 2012). A conditional action is a more fundamental concept than either hedging or processing information through a clearinghouse. In fact the basic idea of a conditional action is a fundamental building block of the idea found to be abstract in *Dealertrack*. The Federal Circuit found that the invention in *Dealertrack*, when distilled to its simplest form, involved "receiving data from one source . . . , selectively forwarding the data . . . , and forwarding reply data to the first source . . . ." *Id.* at 1333. The second of these three steps, selectively forwarding the data, implicitly requires a conditional action. The step requires the preselection of a parameter that is then used to identify and trigger the sending of the preselected data. This process, at its heart, is a conditional action. Thus, as a conditional action is one building block of an idea that the Federal Circuit has already found to be abstract, it too must be an abstract idea.

*Preemption Analysis*

Once an abstract idea is identified the Court must perform a preemption analysis and determine whether the remainder of the claim includes limitations that "narrow, confine, or otherwise tie down the claim so that, in practical terms, it does not cover the full abstract idea itself." *Accenture*, 728 F.3d at 1341. "[T]he relevant inquiry is whether a claim, as a whole, includes meaningful limitations restricting it to an application, rather than merely an abstract idea." *Ultramercial*, 722 F.3d at 1344 (citing *Mayo*, 132 S. Ct. at 1297) (internal quotation marks and italics omitted). Here, after analyzing the additional limitations imposed by the '054

patent claim, the idea of a conditional action has not been sufficiently limited by the patent claim to prevent the patent claims from "cover[ing] the full abstract idea itself." *Accenture,* 728 F.3d at 1341.

The Patentee attempts to limit claim 1 of the patent by confining it to a computer environment in which there must be present at least one stationary computer and one mobile computer along with the presence of two human users.[3] The Patentee further constrains the type of computers being used to computers that can "perform[] a[ny] one of the multiplicity of types of machine events. . . ." US Patent '054, col. 30:18-19. The Plaintiff argues the "'054 patent is replete with examples of both the sorts of mobile devices and stationary machines that may be arranged in a system to carry out the discrete steps delineated in Claim 1." (D.I. 14 at 19). Furthermore, the Plaintiff argues that "the claimed process may only be performed by machines capable of and configured to perceive and communicate changes in user or system conditions." *Id.* at 20. Thus, the Plaintiff contends that, "Because the claimed process cannot be applied outside of an environment made up of a system of physical machines, the '054 Patent is sufficiently tied to particular machines to remove it from the realm of mere abstract ideas." *Id.* Finally, the Plaintiff contends that "the claims are limited by more than a tie to a computer; they are limited by a tie to a multiplicity of computer controlled machines in a system." *Id.* at 21.

Conversely, the Defendant convincingly argues that, "Under any plausible reading, the '054 patent imposes no meaningful limitations on the idea of conditional action. Aside from the abstract idea, the only addition is the use of the idea in a computing environment." (D.I. 10 at 17). The Court agrees.

---

[3] As discussed above, the Court construes the language in the light most favorable to the Plaintiff and consistent with the Plaintiff's proposed claim construction.

8

Here, the '054 patent only makes generic references to computers that are not sufficient to render the claims patentable. Claim 1 of the '054 patent limits the claim by requiring at least two computers, at least one of which is stationary and at least one of which is mobile. US Patent '054, col. 30:19-21. However, these limitations are no more than the incorporation of a generic computer into the claim, which is not sufficient to make an abstract idea patentable. The Federal Circuit has previously determined that abstract claims, which included a "routing system. . . [containing] a central processor coupled to a communications medium . . . , remote credit bureau terminal devices, and remote funding source terminal devices," were nevertheless unpatentable. *Dealertrack*, 674 F.3d at 1319, 1333-34. The Federal Circuit explained that "[s]imply adding a 'computer aided' limitation to a claim covering an abstract concept, without more, is insufficient to render the claim patent eligible." *Id.* at 1333. This is because, "To salvage an otherwise patent-ineligible process, a computer must be integral to the claimed invention, facilitating the process in a way that a person making calculations or computations could not." *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1278 (Fed. Cir. 2012).

> The key to this inquiry is whether the claims tie the otherwise abstract idea to a specific way of doing something with a computer, or a specific computer for doing something; if so, they likely will be patent eligible, unlike claims directed [to] nothing more than the idea of doing that thing on a computer. While no particular type of limitation is necessary, meaningful limitations may include the computer being part of the solution, being integral to the performance of the method, or containing an improvement in computer technology.

*Netgear, Inc. v. Ruckus Wireless, Inc.*, 2013 WL 5436641 at *7 (D. Del. Sept. 30, 2013) (quoting *CLS Bank Int'l. v. Alice Corp. Pty. Ltd.*, 717 F.3d 1269, 1302 (Fed. Cir. 2013) (en banc) (Rader, C.J., concurring and dissenting), *cert. pending*, No. 13-298 (Sept. 4, 2013) (emphasis omitted). Furthermore, even if the patent requires "some physical steps . . . (e.g., entering a query via a

keyboard, clicking a mouse)," that alone will also not confer patentability. *CyberSource Corp. v. Retail Decisions*, Inc., 654 F.3d 1366, 1372 (Fed. Cir. 2011). Here, while, the Patentee has divided the world of computers into two halves, stationary and mobile, and required a computer from each half, this limitation does little more than require two general-purpose computers, an act that does nothing to transform a nonpatentable abstract idea into a patentable invention.

Furthermore, the claim's recitation that a generic "machine event" must be involved is also insufficient to impart patentability. The fact that the final steps of a claim may have a "physical effect [is] insufficient to impart patentability. . . ." *Fort Properties, Inc. v. Am. Master Lease LLC*, 671 F.3d 1317, 1322-23 (Fed. Cir. 2012) (finding that the claims' "intertwinement with deeds, contracts, and real property [were] insufficient to render [the claims] patentable"). Even when the Court uses the Plaintiff's construction of "machine event," "[o]peration of a machine in the system to achieve a detectable function in response to conditions of the user and properties of the system," (D.I. 18-1 at 2) the term does nothing to limit claim 1 of the patent. Any action from turning on a light, replying to an email, to clicking a mouse can be encompassed within this term. Simply because the claim ends with a "machine event" does not make the unpatentable concept of a conditional action patentable.

The Plaintiff additionally argues that, "The specification describes a number of concrete, physical machines or devices that can be configured to perform the claimed method, which relates to 'control by a user of *particular devices*' in 'a multiple computer system.'" (D.I. 14 at 8 (emphasis in original)). However, "the claims of the patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using words or expressions of manifest exclusion or restriction." *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004) (internal quotation marks omitted). Here, the patent's

specification explicitly states that, "The invention is . . . not limited by the description contained herein or by the drawings, but only by the claims." US Patent '054, col. 30:10-12. Therefore, while specific examples are described in the specification, they do not act to further limit the claims and therefore do not make the abstract idea of a conditional action patentable.

While the Plaintiff argues strenuously that this case is similar to the patent in *Ultramercial,* and therefore should be found to be patentable (D.I. 14 at 20, 21), the Court disagrees. In *Ultramercial* the Federal Circuit found that the claim was patentable in part because the patent claimed a "particular internet and computer-based method for monetizing copyrighted products." *Ultramercial,* 722 F.3d at 1350. Furthermore, the Federal Circuit found that "the claim [in *Ultramercial*] appears far from over generalized, with eleven separate and specific steps with many limitations and sub-steps in each category." *Id.* at 1352-53. Finally, the steps recited in *Ultramercial* were more than "token pre- or post-solution steps," *i.e.,* "they are central to the solution itself." *Id.* at 1347, 1352. Here the '054 patent fails to limit claim 1, beyond the abstract idea, other than to limit the claim to two types of general-purpose computers and the occurrence of a machine event. This is not a practical application with concrete steps, and is far less patentable then what was claimed in *Ultramercial.* Claim 1 "simply append[s] conventional steps, specified at a high level of generality," to an abstract idea. *Mayo,* 132 S. Ct. at 1300.

The limitations added to the '054 patent are insufficient to transform a conditional action into a patentable idea. Thus Claim 1 of the '054 patent is directed towards an unpatentable abstract idea. The only plausible reading of claim 1 is that there is clear and convincing evidence that it is invalid under 35 U.S.C. § 101.

*Dependent claims 2 through 8*

Dependent claims 2 through 8 of the '054 patent are also insufficient to transform a conditional action into patentable subject matter. Dependent claims 2 through 8 add one or more limitations relating to the parameters required to trigger the preselected action. For example, dependent claim 3 requires that a triggering condition be based upon a "particular time"[4] while dependent claim 7 requires a "specified elapsed time since a previous event."[5] The Federal Circuit has made clear that "data gathering steps cannot make an otherwise nonstatutory claim statutory." *CyberSource*, 654 F.3d at 1370 (internal quotations and brackets omitted). As dependent claims 2 through 8 do nothing more than add basic data gathering steps, they remain directed towards unpatentable subject matter. Thus, reading claims 2 through 8 in the light most favorable to the Plaintiff, there is clear and convincing evidence that the claims are also invalid under 35 U.S.C. § 101.

*Timing of the 12(b)(6) Motion*

Dismissal under 12(b)(6) is appropriate in this case. Plaintiff argues in their briefing that the "Defendant's lack of an evidentiary record, together with the application of the strong presumption of patentability to claimed subject matter and the high bar required by Rule 12(b)(6) by themselves provide ample justification for denying Defendant's Motion." (D.I. 14 at 23). While it is "rare that a patent infringement suit can be dismissed at the pleading stage for lack of patentable subject matter," dismissal is appropriate when "the *only* plausible reading of the patent [is] that there is clear and convincing evidence of ineligibility." *Ultramercial, Inc.*, 722 F.3d at 1338-39 (emphasis in original).

---

[4] The court construes a "particular time" to be "a detectable time" as per the Plaintiff's proposed constructions.
[5] The court construes a "specified elapsed time" to be "a detectable time period after the previous event" as per the Plaintiff's proposed constructions.

12

The Plaintiff contends in its briefing that the "lack of an evidentiary record" prevents the Court from deciding this motion. (D.I. 14 at 23). At oral argument, however, Plaintiff stated that the case was "teed up for decision."[6] (Tr. 25). The Plaintiff further stated, "I think you can make a more thorough analysis with the discovery claim construction, but looking [at] it myself, I feel like you've got enough in the record to decide [the motion]." *Id.* Therefore, as the Plaintiff raises no question of fact in its briefing to prevent the Court from ruling on this motion, as the Plaintiff appeared to concede during oral argument that the motion was ripe for decision, and based on the Court's independent review of the record, the Court finds that this motion is ripe for decision.

## CONCLUSION

For the reasons above, the Court will **GRANT** Defendant's Motion to Dismiss (D.I. 9). An appropriate order will be entered.

---

[6] Between the briefing and oral argument, at the Court's request, Plaintiff submitted its proposed claim constructions. (D.I. 18).

13